UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAYMOND RICHARDSON, | : |
| | : |
| Plaintiff, | : |
| | : No. 3:08cv1856 (MRK) |
| v. | : |
| | : |
| STEVEN ORLOWSKI and | : |
| CHICK BISTANY, | : |
| | : |
| Defendants. | : |

## RULING AND ORDER

Plaintiff Raymond Richardson, administrator of the estate of his grandson, Joseph Bak, has brought suit against Defendants Steven Orlowski and Chick Bistany, both Connecticut State Troopers, for the shooting death of Mr. Bak.[1] Mr. Richardson's Second Amended Complaint ("Complaint") asserts three claims against both Defendants: (1) a § 1983 claim alleging that the Defendants violated Mr. Bak's right to be free from the use of excessive force; (2) an analogous claim under §§ 7 and 9 of the Connecticut Constitution; and (3) a claim under Connecticut's wrongful death statute, Conn. Gen. Stat. § 52-555, alleging that the Defendants' recklessly and maliciously caused Mr. Bak's death. *See* Compl. [doc. # 57].

Currently pending is the Defendants' Motion for Summary Judgment, in which the Defendants argue that the undisputed facts establish that their use of force was reasonable under the circumstances – or, in the alternative, that they are entitled to qualified immunity. *See* Defs.' Mot. for Summ. J. [doc. # 59]; Defs.' Mem. in Supp. of Summ. J. [doc. # 61]. The Court disagrees.

The undisputed facts establish that Mr. Bak was shot five times after leading the Defendants (and several other law enforcement officers) on a multi-town chase. Mr. Bak was suspected of raping his girlfriend the night before, stealing her car, and robbing a bank earlier in the day in question. The officers knew that Mr. Bak was suicidal, had sought a gun in the hours prior to their encounter with him, and was wielding a four-inch steak knife. After crashing his vehicle into Defendant Bistany's police cruiser, Mr. Bak attempted to flee on foot. He was chased by the two Defendants, with other officers following close behind. The foot chase – throughout which the Defendants were no more than 15-20 feet behind – lasted a matter of minutes, and ended when Mr. Bak abruptly stopped running, pulled the steak knife from his pocket, and whirled around to face the officers in a threatening manner. At this point, the Defendants were, by all accounts, no more than 10-15 feet behind Mr. Bak. While accounts differ regarding whether or not Mr. Bak advanced toward the Defendants prior to being shot, there is no dispute that the troopers did not anticipate Mr. Bak's unexpected actions in turning to face them with the knife raised at shoulder level; shortly after Mr. Bak did so, the two Defendants shot him five times (a sixth shot missed). Mr. Bak fell to the ground upon being shot and was taken to the hospital within a matter of a few minutes, but the record establishes that no amount of medical treatment could have saved his life, no matter how quickly it was administered.[2]

If this was the entirety of the factual record, the Court would have little trouble concluding

---

[1] Mr. Richardson initially named six additional defendants, but he voluntarily withdrew all claims against those defendants on December 28, 2009. *See* Pl.'s Withdrawal of Claims as to Certain Defs. [doc. # 56].

[2] Perhaps on this basis, counsel for Mr. Richardson informed the Court during oral argument that he was no longer pursuing any claim based on the alleged failure to provide Mr. Bak with first aid immediately upon him being shot and secured by the officers.

that the Defendants are, at a minimum, entitled to qualified immunity. The combination of Mr. Bak's unexpected actions; his wielding of the knife within such a short distance from the officers; the degree to which he was known to be dangerous; and the rapidly-evolving nature of the fatal encounter would, in combination, make it difficult (if not impossible) to fault the Defendants for firing their weapons when they were so clearly in serious peril. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003); *Woodward v. Town of Battleboro*, No. 1:02CV35, 2006 WL 36906, at *6-7 (D. Vt. Jan. 5, 2006); *see also Chappell v. City of Clev*eland, 585 F.3d 901, 911-12 (6th Cir. 2009).

But the record contains disputed material facts that preclude such a conclusion, at least at this time. As Mr. Richardson has argued, there is evidence from which a reasonable jury could conclude that at least two of the five shots that struck Mr. Bak did so in his back – and at least one of those entered his body at "relatively close to a ninety-degree angle." Dep. of Dr. H. Wayne Carver [doc. # 70-17] at 95. While the Defendants have argued that the shots to the back were merely the product of Mr. Bak twisting as he fell, that is not the only conclusion that the jury could reach. Additionally, Dr. Carver, the Chief Medical Examiner for the State of Connecticut and the doctor who happened to conduct Mr. Bak's autopsy, testified at his deposition that Mr. Bak was likely on the pavement when one of the shots hit him:

> [O]ne wound in [Mr. Bak's] arm displayed a very unusual pattern of partial exit and abrasion of the skin above the wound track. And that, in my experience, to a reasonable degree of medical certainty, must have occurred because that skin was in contact with a hard surface when the projectile passed under the skin. And given the nature of the abrasions that were caused, in my experience, it is most likely to be – well, it was something with a relatively course granular shaped surface. And pavement is the most common such object in my experience.

*Id.* at 42; *see also id.* at 50, 76-78, 81.

In sum, there is medical evidence suggesting that Mr. Bak may have been shot when he was not posing a threat to the officers or anyone else. *See also* Witness Statement of Anthony McCrorey dated Mar. 3, 2008, Ex. A to Defs.' Mot. for Summ. J. [doc. # 59-1] at 103 (stating that he heard a total of five shots, but that "[a]fter the first three shots, [Mr. Bak] went down to the ground," dropping the knife as he went). If true, that evidence might render the Defendants' use of force unreasonable in the constitutional sense, and might also deny them a qualified immunity defense. *See, e.g.*, *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) ("With respect to deadly force in particular, 'an officer's decision to use deadly force is objectively reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'") (quoting *Cowan v. Breen*, 352 F.3d 756, 762 (2d Cir. 2003)); *O'Bert v. Vargo*, 331 F.3d 29, 40 (2d Cir. 2003)); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

In support of their Motion for Summary Judgment, Defendants submitted an affidavit form Dr. Carver – signed approximately three weeks after his deposition – in which Dr. Carver attempts to retract some of his deposition testimony. *See* Carver Aff. [doc. # 59-16]. Mr. Richardson has moved to strike this affidavit, arguing that it is improper for Defendants to attempt to erase an issue of material fact with an affidavit that contradicts prior deposition testimony. *See* Pl.'s Mot. to Strike [doc. # 68]. While the Court agrees that the Defendants should have, at a minimum, alerted Mr. Richardson to Dr. Carver's apparent change of opinion prior to moving for summary judgment, the Court finds it unnecessary to strike the affidavit, for the simple reason that it is far too vague and conclusory to have much evidentiary value at all. This is particularly true in light of Dr. Carver's

repeated, detailed, and emphatic explanation during his deposition that Mr. Bak's arm must have been on the ground (or another pavement-like surface) when at least one of the bullets struck him. That said, the jury will certainly be able to consider the probative value of Dr. Carver's change of opinion at trial.

Moreover, at least one witness reported seeing an officer kick Mr. Bak in the head area several times after he was shot and while he as laying face-down on the sidewalk. *See* Batchelor Dep. [doc. # 70-15] at 24-25, 31, 40-43, 49-50, 52. While there may be credibility issues with regard to this particular eyewitness, credibility determinations are wholly the province of the jury. *See Kaytor v. Electric Boat Corp.*, ___ F.3d ___, 2010 WL 2593500, at *7-8 (2d Cir. June 29, 2010). There is also forensic evidence that is consistent with Mr. Bak being kicked, as Dr. Carver testified that there were abrasions on Mr. Bak's forehead and chin that could have been caused by kicking. *See* Carver Dep. [doc. # 70-17] at 71-73. To be sure, Dr. Carver also said that they could have been the result of Mr. Bak striking his head on the sidewalk after falling or some other blunt force, but he also stated that the abrasions would have had to have been caused within hours of Mr. Bak's death, as they had not yet begun to heal. S*ee id.* at 96-97; *see also* Incident Report dated Mar. 13, 2008, Ex. A to Defs.' Mot. for Summ. J. [doc. # 59-1] at 76-77 (reporting that just prior to the arrival of the ambulances, Mr. Bak was bleeding from his head). While the jury would, of course, be entitled to disbelieve the only eyewitness who claimed to see Mr. Bak being kicked and to infer that the abrasions had some other cause, there is sufficient evidence from which it could conclude the opposite – that Mr. Bak *was* kicked while he was on the ground, and while posing no threat to the officers. Such a determination might well amount to excessive force depending on the circumstances in which Mr. Bak was kicked (Defendants claim that they were kicking away the

knife). *See Maxwell v. City of New York*, 380 F.3d 106, 109-10 (2d Cir. 2004); *Husbands v. City of New York*, 335 Fed. Appx. 124, 129 (2d Cir. 2009) (summary order); *Hayes v. N.Y. City Police Dep't*, 212 Fed. Appx. 60, 62 (2d Cir. 2007) (summary order).

In conclusion, there are genuine conflicts in the evidentiary record regarding whether the Defendants' actions were reasonable under the circumstances – conflicts that are decidedly not this Court's role to resolve. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Kaytor*, 2010 WL 2593500, at *7-8; *Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). Accordingly, Defendants' Motion for Summary Judgment [doc. # 59] must be DENIED. *See Cowan*, 352 F.3d at 756; *O'Bert*, 331 F.3d at 40. Additionally, and for the reasons stated during the July 13, 2010 oral argument, Plaintiff's Motion *in Limine* [doc. # 63] and Motion to Strike [doc. # 68] are DENIED, but without prejudice to renewal in connection with the preparation of the parties' joint trial memo. If the motions are renewed, the parties may incorporate their prior briefs by reference. The Court will issue a trial scheduling order separately.

IT IS SO ORDERED.

/s/   Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: July 15, 2010.**